UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EMMA DONALD and<br>CHRISTOPHER LEE | §<br>§<br>§ | Civil Action No. _____ |
| Plaintiffs, | §<br>§ | |
| vs. | §<br>§<br>§ | |
| PLUS4 CREDIT UNION | §<br>§ | |
| Defendant. | § | JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs Emma Donald ("Ms. Donald") and Christopher Lee ("Mr. Lee") (collectively "Plaintiffs") and complain of Defendant Plus4 Credit Union ("Defendant") and for their causes of action would show the Court as follows:

### I.
### INTRODUCTION

1. This lawsuit arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended. Plaintiffs seek a recovery of damages, fees, costs, and interest from Defendant pursuant to applicable federal laws.

### II.
### PARTIES

2. Plaintiff, Emma Donald is an individual who resides in Brazoria County, Texas.

3. Plaintiff, Christopher Lee is an individual who resides in Harris County, Texas.

4. Defendant, Plus4 Credit Union is a Texas state-chartered credit union doing business in the State of Texas. It may be served with process by serving its President, Vice

President, or any officer at 9998 Almeda Genoa, Houston, Texas 77075. Plaintiffs are also requesting a Waiver of Service of Summons from Defendant at this time.

## III.
## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(a).

6. This court has personal jurisdiction over Defendant because it conducts business within the Southern District of Texas.

7. Venue of this proceeding is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) since Defendant is a resident of the Southern District of Texas.

8. Jurisdiction is proper pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.

## IV.
## CONDITIONS PRECEDENT

9. Plaintiff Emma Donald filed a Charge of Discrimination alleging race, color, and sex discrimination against Defendant under Charge Number 460-2015-0218 with the Equal Employment Opportunity Commission ("EEOC") on May 18, 2015.

10. Plaintiff Christopher Lee filed a Charge of Discrimination alleging race, color and religion discrimination against Defendant under Charge Number 460-2015-2831 with the Equal Employment Opportunity Commission ("EEOC") on June 4, 2015.

11. On October 21, 2015, the EEOC issued Notices of Right to Sue entitling Plaintiffs to file an action under Title VII. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiffs' receipt of the Notices of Right to Sue.

12.     All conditions precedent to filing this cause of action have been performed, have occurred, or have otherwise been satisfied as required by applicable law.

## V.
## FACTS

*Emma Donald*

13.     Plaintiff Emma Donald is a fifty (50) year old, African-American Black Female. She was a conscientious and reliable employee who performed her duties in a professional manner.

14.     Ms. Donald began working for Defendant as their Human Resources Manager on about November 12, 2013 until she was terminated by Defendant on or about March 27, 2015.

15.     Ms. Donald witnessed multiple incidents of unlawful discrimination by Defendant throughout her employment with Defendant.

16.     From on or about January 1, 2014 until July 2014, Ms. Donald's supervisor and Chief Operating Officer Patricia Fendley ("Fendley") began asking Ms. Donald for the race of each top candidate who was applying with Plus4 Credit Union and the race of any new employee.

17.     On or about June 2014, Ms. Donald submitted a hiring packet for a Hispanic Female candidate. Chief Executive Office, Vladimir Stark ("Stark") and Ms. Fendley then separately reprimanded Ms. Donald, because there was information within the hiring packet regarding Affirmative Action. Mr. Stark and Ms. Fendley both expressed that they did not want that information in the hiring packet and that is why she was being written up. Ms. Fendley then ordered Ms. Donald to hire a White Male candidate over the more qualified Hispanic Female.

18.     On or about June 2014 a discussion regarding Juneteenth was held by Ms. Fendley, Susan Sireno ("Sireno") and Teri Edenfield ("Edenfield"), wherein Ms. Fendley said

3

that it was the end of slavery. Then Ms. Sireno stated, "every time someone rode in to attempt to tell everyone that slavery was over, they would be shot dead." Ms. Sireno then motioned as if she had a gun and said "POW POW." Ms. Edenfield and Ms. Sireno laughed. There was never any correction or repercussions for these racially demeaning comments. In fact, Ms. Fendley regularly accepted and participated in discriminatory discussions of this nature

19. On or about July 2014, several meetings were held wherein Ms. Fendley instructed Ms. Donald to only hire White employees for the new Humble branch. Specifically, Ms. Fendley stated, "hire all White but maybe have one (1) Black person as a teller in the back so they wouldn't be seen." "We have to have the right look." This meant only White employees for the Humble branch. Ms. Fendley also stated that if she "had known Dana Mack was Black, then Mr. Stark would not have hired her."

20. On or about August 2014, Ms. Donald hired an African-American Black Female for the Aldine Bender location. Shortly after, Ms. Fendley told Ms. Donald that she could not place the employee at that location "because she was too attractive and would be taking money from men at that location (specifically the board members) because she wouldn't earn enough money." Ms. Donald informed Ms. Fendley that, "not all Black females are like that." Ms. Fendley's remarks were discriminatory.

21. On or about August 18 2014, Ms. Donald hired Plaintiff Christopher Lee, an African-American Christian Male for the Humble location.

22. Later, Ms. Fendley instructed Ms. Donald to fire Mr. Lee because he had dreadlocks. Ms. Donald immediately informed Ms. Fendley that this was considered discrimination and that he cannot be fired because of that. Ms. Fendley continued by instructing Ms. Donald not to tell Christopher's staffing agency, PrideStaff, the real reason for firing him.

Ms. Fendley also told Ms. Donald that she would need to start sitting in on all of Ms. Donald's interviews so that, "we can hire the right people for Humble."

23.     Manager Sharoye Taylor ("Taylor") contacted Ms. Donald a few minutes later and told her that there was a meeting regarding Mr. Lee. He stated that Ms. Sireno said "Chris is Black and has some type of braids in his head, and doesn't have the right look for Humble." Also, Mr. Taylor told Ms. Donald that Mr. Stark stated they needed to start doing the "look test" on all candidates that Ms. Donald hires. Ms. Donald later asked Ms. Sireno what was wrong with Mr. Lee, wherein Ms. Sireno said that Mr. Lee did not have the "look" because he had dreads.

24.     Ms. Fendley instructed Ms. Donald to fire Mr. Lee again. However, Ms. Donald told her that it was discrimination and that she would not participate in illegal actions. Ms. Fendley then began to retaliate against Ms. Donald because she pointed out the discrimination and because she would not participate in such activities.

25.     On or about August 20, 2014, Ms. Donald attended a meeting with Defendant's attorney, Terrance Robinson ("Robinson") of Kennard Blankenship Robinson, P.C., regarding her discrimination claims. Ms. Donald informed Mr. Robinson that she was instructed to only hire White candidates at the Humble location and to terminate Mr. Lee because he had dreadlocks. Ms. Donald also explained that Ms. Fendley specifically commented that another employee, Dana Mack, an African-American Black Female, "would not have been hired if we knew she was Black." Mr. Robinson expressed that his own wife has dreadlocks and that these actions were discriminatory, and then assured Ms. Donald that they would come back to the company to conduct leadership and diversity classes with the management team. The classes never took place.

5

26. From on or about August 2014 until on or about November 2014, Ms. Donald received several complaints from tellers regarding unfair treatment towards Black employees by managers. On or about September 2014, Ms. Donald sent an e-mail to Ms. Fendley, Mr. Taylor, and Operations Manager, Kerri Zinn ("Zinn") regarding these multiple complaints, specifically regarding complaints against manager Christy Osbourne ("Osbourne"), a White Female. All Black employees that complained about Ms. Osbourne were retaliated against and/or eventually terminated (Stephanie Williams, LaVonta Walker, and Chantelle Williams).

27. Ms. Fendley informed Ms. Donald that they were not going to do anything about the complaints and that going forward there always needed to be a manager, the Human Resources Assistant, Ms. Fendley, or Mr. Stark present anytime Ms. Donald spoke with an employee. Ms. Fendley stated later in a meeting that employees who had concerns were instructed by their managers not to speak with Human Resources.

28. On or about October 2014, Ms. Fendley continued retaliating against Ms. Donald by placing a filing cabinet in her office for "manager personnel files." Ms. Donald explained that in her 10 (ten) years of Human Resources experience, she had never experienced anything of that nature. Ms. Donald contacted Karen Hinton ("Hinton") from CUPeople, Defendant's Human Resources Consultant, regarding this. Ms. Hinton informed Ms. Donald that it was discriminatory if no one else was being treated that way.

29. From on or about November 2014 until on or about January 2015, Ms. Fendley expressed that she wanted LaDonna Wells ("Wells"), an African-American Black Female, fired. Ms. Donald informed Ms. Fendley that they could not fire her. Ms. Fendley regularly made discriminatory comments regarding Ms. Wells' hair. Ms. Wells had also recounted a birthday celebration, wherein Ms. Fendley made a discriminatory joke about "why do y'all's mothers

6

name y'all names like that?" Ms. Wells was told not to go to Human Resources and also received a disciplinary action for something that a Non-Black employee was not reprimanded for.

30. On or about February 10, 2015, Ms. Donald received a performance review in a meeting with Ms. Fendley that was dated October 31, 2014. Ms. Donald was told that once a decision is made by senior management she could state her opinion, however, the decision must stand; to be mindful of the chain of command; to respect her fellow managers; and not speak directly with employees. Ms. Fendley also expressed that Mr. Stark wanted to fire her. One of the senior management decisions that Ms. Donald opposed was refusing to terminate Christopher Lee because of his race and color.

31. On or about March 2, 2015, Ms. Donald informed Ms. Hinton that Ms. Wells was going to escalate concerns of discrimination that she had expressed regarding the mistreatment by Defendant against Black women.

32. On or about March 10, 2015, Ms. Donald met with Ronald Dupree ("Dupree"), another lawyer with Kennard Blankenship Robinson, P.C. Ms. Donald told Mr. Dupree about her prior meeting with Mr. Robinson, the retaliation she had been subject to because she would not participate in the unlawful firing of Mr. Lee, and Defendant's discriminatory and retaliatory actions towards her and other employees. She also informed Mr. Dupree that Ms. Fendley was retaliating against Ms. Wells, and that Ms. Fendley had made a derogatory comment regarding African-American names. Mr. Dupree told Ms. Donald that there would be changes, but changes were never made.

33. On or about March 12, 2015, Ms. Donald sent an e-mail to Ms. Fendley, Mr. Stark and Teri Edenfield ("Edenfield") regarding complaints about IT Director, Leo Carejo's

("Carejo") discriminatory treatment of African-American employees. The complaints indicated that Mr. Carejo was disrespectful and rude to African-American employees and treated them differently than non-African-American employees. Defendant never addressed or investigated these complaints, and failed to take any disciplinary action against Mr. Carejo.

34. On or about March 25, 2015, Ms. Donald sent an e-mail to Mr. Stark, Mr. Robinson, and Mr. Dupree inquiring into the situation with Ms. Wells' complaints. Two (2) days later, on or about March 27, 2015, Ms. Donald was terminated because "financial goals were not being met" and that they were outsourcing Human Resources. This was an attempt by Defendant to cover up its discriminatory and retaliatory activities. The Human Resources Assistant, Amy Baker, was also let go to effectuate the cover up. In fact, Mr. Stark told Ms. Baker that they will probably bring her back in two (2) months.

35. Defendant terminated Ms. Donald, at least in part, because of her race, color, and/or sex. In the alternative, Defendant wrongfully discharged Ms. Donald in retaliation for opposing unlawful discriminatory actions by the Defendant, and/or for refusing to participate in those unlawful actions.

*Christopher Lee*

36. Plaintiff Christopher Lee is a twenty-five (25) year old, African-American Black Male. He was a conscientious and reliable employee who performed his duties in a professional manner.

37. Mr. Lee began working for Defendant on or about August 18, 2014 until he was terminated by Defendant on or about November 18, 2014.

38. On or about October 15, 2014, Branch Manager Dana Young ("Young") began treating Mr. Lee differently, in a harassing manner, by constantly watching and critiquing him.

Mr. Lee later found out from Ms. Donald that Ms. Fendley had been monitoring him by video-tape in the hopes of finding a reason to fire him. Ms. Fendley discussed this with multiple managers.

39. On or about November 18, 2014, Ms. Mack and Mr. Taylor terminated Mr. Lee because of "unprofessionalism," however, Defendant could not substantiate any specific instances of unprofessionalism. In fact, Mr. Lee was always professional, and this was an attempt to hide the actual discriminatory and unlawful reasons for terminating him.

40. Defendant terminated Mr. Lee because of his color, race, and/or religion.

41. Ms. Donald informed Mr. Lee of the circumstances surrounding his employment and termination, including: Ms. Fendley's instructions to fire him because of his dreadlocks; Ms. Fendley's instructions not to tell the staffing agency the real reason he was to be fired; the need for a "look test;" Ms. Sireno's comments regarding his dreadlocks, color, and race; and Ms. Donald refusing to participate in his unlawful discriminatory termination.

42. Defendant terminated Mr. Lee, at least in part, because of his race, color, and/or religion.

43. Upon information and belief, similarly situated employees were treated differently than Plaintiffs.

44. Plaintiffs have suffered damages as a result of Defendant's discriminatory conduct.

## VI.
## CAUSES OF ACTION

**A. Title VII – Race, Color, Sex, and Religion Discrimination.**

45. Each and every allegation contained in the foregoing paragraphs is realleged as if fully written herein.

46. Plaintiff Emma Donald is a fifty (50) year old, African-American Black Female.

47. Because of Ms. Donald's race, color, and/or sex she belongs to a group of persons that 42 U.S.C. § 2000e, *et seq.* intended to protect against discrimination in terms, conditions or privileges of employment.

48. By the above-described acts, Defendant discriminated against Ms. Donald because of her race, color, and/or sex by discriminating against her in terms, conditions or privileges of employment, in violation of 42 U.S.C. § 2000e, *et seq.*

49. Plaintiff Christopher Lee is a twenty-five (25) year old, African-American, Black, Christian, Male.

50. Because of Mr. Lee's race, color, and/or religion he belongs to a group of persons that 42 U.S.C. § 2000e, *et seq.* intended to protect against discrimination in terms, conditions or privileges of employment.

51. By the above-described acts, Defendant discriminated against Mr. Lee because of his race, color, and/or religion by discriminating against him in terms, conditions or privileges of employment, in violation of 42 U.S.C. § 2000e, *et seq.*

52. Further, Defendant acted with reckless indifference to the federally protected rights of Plaintiffs.

53. Plaintiffs were treated differently than others similarly situated outside their protected classes.

54. There was no legitimate nondiscriminatory reason for Defendant's decision to terminate Plaintiffs.

55. Defendant's stated reasons for terminating Plaintiffs were false.

56. Race, color, sex and/or religion were factors in Defendant's decisions to terminate Plaintiffs.

57. Because of Defendant's discriminatory actions, Plaintiffs have suffered adverse employment action, including loss of wages and other damages.

**B. Title VII - Retaliation**

58. Title VII of the Civil Rights Act of 1964 prohibits retaliation against an employee for opposing any unlawful employment practice or because the employee "has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter." *See* 42 U.S.C. § 2000e-3(a). This provision has two components, an opposition clause and a participation clause. *See Payne v. McLemore's Wholesale & Retails Stores*, 654 F.2d 1130, 1135 (5th Cir. Unit A 1981). Courts have consistently recognized the explicit language of Title VII's participation clause is expansive and seemingly contains no limitations. *See Clover v. Total Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999). (The words 'participate in any manner' express Congress' intent to confer exceptionally broad protection upon employees covered by Title VII.) Referring directly to this provision, the Supreme Court has notes "[r]ead naturally, the word 'any' has an expansive meaning, and thus, so long as Congress did not add any language limiting the breath or word, the term 'any' must be given literal effect." *See United States v. Gonzalez*, 520 U.S. 1, 5 117 S.Ct. 1032 (1997). Courts have also held that the expansive language of the participation clause protects an employee who defends himself against charges of discrimination. *Durant v. MillerCoors, LLC*, 415 Fed.Appx. 927, 932 (10th Cir. 2011). *See* EEOC Compliance Manual § 8-II(C)(1) n.24 (May 20, 1998).

59. Pursuant to 42 U.S.C. § 2000e-3(a) Plaintiffs plead a cause of action against the Defendant for Title VII retaliation.

11

60. The allegations contained in all paragraphs of the Complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

61. Plus4 Credit Union violated the anti-retaliation provisions of Title VII by firing Ms. Donald for asserting her right to refuse to participate in unlawful discrimination practices. Ms. Donald's statement that "[the termination of Christopher Lee] was considered discrimination, and that he cannot be fired because of that" and that "[she would] not participate in illegal actions" were protected under Title VII's participation clause.

62. Since the United State Supreme Court has made clear that *any* participation is protected under the statute, Ms. Donald alleges that Plus4 Credit Union violated Title VII by terminating her for asserting her right to refuse to participate in unlawful discriminatory actions surrounding the termination of Christopher Lee. *See* United States v. Gonzalez, 520 U.S. 1, 5 117 S. Ct. 1032 (1997); *See also Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir. 1997).

## VII.
## ATTORNEY'S FEES

63. Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

64. Plaintiffs are entitled to recover attorney's fees (including expert fees) and costs for bringing this action pursuant to Title VII.

## VIII.
## JURY DEMAND

54. Plaintiffs respectfully requests that this matter be tried before a jury.

## IX.
## PRAYER

WHEREFORE, Plaintiffs Emma Donald and Christopher Lee pray that Defendant Plus4 Credit Union be cited to appear and answer and that after final trial hereof, this Court grant judgment in favor of Plaintiffs Emma Donald and Christopher Lee and against Defendant as follows:

.      a.    Back pay, including, but not limited to, their wages and benefits;

      b.    Front pay, including, but not limited to, their wages and benefits;

      c.    Mental anguish and emotional distress in the past and future;

      d.    Liquidated damages;

      e.    Compensatory damages;

      f.    Costs of suit;

      g.    Pre-judgment and post-judgment interest, as allowed by law;

      h.    Reasonable attorney's fees (including expert fees); and

      i.    Any and all other relief that the Court deems appropriate.

Respectfully submitted,

By:   /s/ Lionel Martin
Lionel Martin
Texas State Bar No. 24037032
Federal I.D. No. 31342
Lmartin@mgmartinlaw.com

12946 S. Dairy Ashford Road
Suite 220
Sugar Land, Texas 77478
Tel: (281) 277-3066
Fax: (281) 277-3067

***Attorney-In-Charge for Plaintiffs***

**OF COUNSEL:**

**GARCIA-MARTIN & MARTIN, P.C.**

Melissa Garcia-Martin
Federal I.D. No. 38613
Texas State Bar No. 24039035
mmartin@mgmartinlaw.com

12946 S. Dairy Ashford Road
Suite 220
Sugar Land, Texas 77478
Tel:  (281) 277-3066
Fax: (281) 277-3067