United States District Court
Southern District of Texas

**ENTERED**

July 31, 2017

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EMMA DONALD *and* CHRISTOPHER LEE, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-123 |
| | § | |
| PLUS4 CREDIT UNION, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court are motions for summary judgment and objections to summary judgment evidence, which include: (1) defendant Plus4 Credit Union's ("Plus4") motion for summary judgment against plaintiff Emma Donald (Dkt. 16); (2) Plus4's motion for summary judgment against plaintiff Christopher Lee (Dkt. 17); (3) plaintiffs' objections and motion to strike Plus4's summary judgment evidence (Dkt. 22); and (4) Plus4's objections to the plaintiffs' summary judgment evidence (Dkt. 26).

Having considered the motions, responses, replies, objections, evidentiary record, and applicable law, the court is of the opinion that (1) Plus4's motion for summary judgment against Emma Donald (Dkt. 16) should be GRANTED IN PART AND DENIED IN PART; and (2) Plus4's motion for summary judgment against Christopher Lee (Dkt. 17) should be GRANTED IN PART AND DENIED IN PART.

Additionally, (3) the plaintiffs' objections should be SUSTAINED IN PART AND OVERRULED IN PART and their motion to strike (Dkt. 22) should be GRANTED IN PART AND DENIED IN PART; and (4) Plus4's objections to the plaintiffs' summary judgment evidence (Dkt. 26) should be SUSTAINED IN PART AND OVERRULED IN PART.

## I. BACKGROUND

This is an employment discrimination case. Emma Donald and Christopher Lee (collectively, the "Plaintiffs") brought suit against their former employer, Plus4, for terminating their positions because of discriminatory and retaliatory reasons. Dkt. 9. Donald, an African American female, served as Plus4's Human Resources Manager from November 12, 2013, until her termination on March 27, 2015. *Id.* In July 2014, Donald alleges that Plus4's Chief Operating Officer Patricia Fendley instructed her to hire only white employees for a new branch office located in Humble, Texas. Dkts. 9, 21. Fendley stated, "Hire all White but maybe have one (1) Black person as a teller in the back so they wouldn't be seen . . . We have to have the right look." Dkts. 9, 21-2, Ex. A at ¶ 3 (Donald Aff.). Donald verbally disagreed with Fendley's order. *Id.*

### A.      Christopher Lee's Hiring

In August 2014, Donald hired an African American female for another branch location and co-plaintiff Lee, an African American male as a temporary bank teller for the Humble location. Dkt. 9. Lee was referred to Plus4 from PrideStaff, a temporary staffing agency. Dkt. 17. During his interview, Lee had his hair styled in dreadlocks. Dkt. 17, Ex. B. at 48 (Lee Dep.). Lee interviewed with Donald, Sales Manager Sharoye Taylor, and Humble Branch Manager Dana Mack. *Id.* at 47. On August 8, 2014, Donald, Mack, Fendley, and Plus4 Chief Executive Officer Vladimir Stark agreed to hire Lee and they all signed his approval form for him to begin a 90-day trial period. Dkt. 17 at 6; Ex. D (Lee's approval to hire form).

On August 18, 2014, Lee's first day of employment, Donald alleges that Fendley instructed her to fire Lee because he was black and had dreadlocks. Dkts. 9, 21-2, Ex. A ¶¶ 4, 5. Fendley told Donald not to tell PrideStaff the real reason behind Lee's termination. *Id.* Fendley also said that she would start sitting in on all of Donald's interviews so that "we can hire the right people for Humble."

2

*Id.* Donald verbally disagreed with Fendley and said that Lee cannot be fired for those reasons. *Id.* Donald later sent her concerns to Fendley via e-mail. *Id.* According to Donald, Fendley began to closely monitor Lee through the company's video system on a daily basis, which she did not do to other employees to the same extent or frequency. Dkts. 9, 21-2, Ex. A ¶ 8. On several other occasions, Fendley ordered Donald to terminate Lee's employment, and each time Donald refused. *Id.* at ¶ 9.

Stark recommended that Donald meet with one of Plus4's lawyers from the law firm Kennard Blankenship Robinson, P.C. *Id.* In August 2014, Donald told the lawyer about Fendley's instruction to hire only whites for the Humble location and to fire Lee because he was black and had dreadlocks. *Id.* Donald claims that the lawyer said he would conduct leadership and diversity classes with Plus4 management, but no such classes were conducted. *Id.*

After refusing to terminate Lee, Donald argues that on October 31, 2015, she received a less favorable performance review and was told to be compliant when the executive team asked her to do something. Dkt. 16-5, Ex. A at 116 (Donald Dep.). Donald alleges that up until that point, the only time that she refused to comply with executive orders was when she was asked to "fire Christopher Lee and discriminate against him for having dreads" and "not to hire any blacks at the Humble location." *Id.* Donald alleges that this written review was not given to her until February 10, 2015, about a month and a half before she was terminated. Dkt. 9.

### B.     Christopher Lee's Termination

On November 14, 2014, Lee was terminated from his temporary branch teller position. Dkt. 17. The parties dispute the reasons for Lee's termination. During Lee's trial period, Plus4 alleges that his manager complained about his performance because he was taking personal calls while he was at work, he did not permit a new employee to train with him, and he disturbed other

3

co-workers with his loud singing. Dkt. 17. On November 12, 2014, Humble Branch Manager Dana Mack e-mailed Donald regarding Lee's performance issues. Dkt. 17, Ex. N. That same day, Donald forwarded the e-mail to Fendley and asked for Fendley's permission "to let Friday be Christopher [Lee's] last day," stating that these were "performance issues." Dkt. 17, Ex. O. Donald, on the other hand, argues that after refusing to terminate Lee on several occasions, she "no longer could win against Ms. Fendley" and agreed to Lee's termination. Dkt. 21-2, Ex. A ¶ 11. Donald stated that she needed her job and "wanted all of this to end." *Id.* "I knew that Ms. Fendley was going to get her way, with or without my support." *Id.*

Plus4 argues that four months after Lee was terminated, Donald contacted Lee and told him that he had been fired because of discrimination against his race, color, and religion. Dkt. 17. Plus4 argues that Lee's discrimination claims fail because he cannot show that the reason why he was terminated was because of his race, color, or religion and not because of his performance at work. *Id.* Lee counters that there is direct evidence that his termination was due to discrimination against his color, race, and/or religion based on Fendley's statements and actions. Dkt. 21.

### C.   Emma Donald's Termination

From November 2014 until Donald's termination in March 2015, Donald alleges that she: (1) "continued to oppose other discriminatory practices and [believed she] was being retaliated against by Ms. Fendley," and (2) met with Plus4 lawyers on a second occasion to discuss her concerns that Fendley was retaliating against her and LaDonna Wells, an African American female who Fendley wanted fired. Dkt. 21-2, Ex. A (Donald Aff.).

On March 27, 2015, Donald was terminated from her position as Human Resources Manager. Dkts. 9, 16. The parties dispute the reason for her termination. Plus4 argues that it eliminated Donald's position due to a reduction in force. Dkt. 16. In the first quarter of 2015, Plus4 claims that

4

it began to face financial issues.  *Id.*  Donald attended a managers meeting where they made several recommendations to reduce costs, including a general recommendation to reduce staffing costs by $50,000.  *Id.*  According to Plus4, Stark conferred with Fendley about the managers' recommendations, and then individually came to the conclusion to eliminate the Human Resources Department.  *Id.*  This included Donald's Human Resources Manager position and a Human Resources Assistant position held by Amy Baker, a white female.  *Id.*  Stark prepared a memo analyzing the reduction in force of the Human Resources Department and claimed that an Executive Assistant would absorb any duties not handled by a third-party human resources company.  *Id.*; Dkt. 23-2 at 39 (memo analyzing reduction in force).

While Donald does not dispute that the company was facing financial difficulties, she argues there is scant evidence of a reduction in force.  For example, as the Human Resources Manager in February 2014, Donald received an e-mail from Fendley advising that the company was under a hiring freeze, but during that same month, Plus4 hired Celeste Douglas for a manager position without an open office or written job description.  Dkt. 21-2, Ex. A ¶ 15; *see also* Dkt. 21-4, Ex. C at 44 (Stark Dep.) (hiring freeze).  Donald argues that the real reasons why she was terminated were because Plus4 discriminated against her race, color, and/or sex, and retaliated against her for (1) disregarding Fendley's instruction to hire whites only, (2) repeatedly refusing to terminate Lee when Fendley ordered her to do so, and (3) for meeting with Plus4 lawyers to discuss her concerns on two occasions, including a March 2015 meeting held about two weeks before her termination.  Dkt. 21.

### D. Procedural History

On May 18, 2015, and on June 4, 2015, Donald and Lee each filed a separate charge of discrimination against Plus4 with the Equal Employment Opportunity Commission ("EEOC"). Dkt. 9.  On October 21, 2015, the EEOC issued Notices of Right to Sue, entitling the Plaintiffs to

file an action under Title VII. *Id.* On January 15, 2016, the Plaintiffs filed a complaint against Plus4 with discrimination and retaliation claims. Dkt. 1. On January 20, 2017, Plus4 moved for summary judgment against all of Emma Donald's discrimination and retaliation claims (Dkt. 16) and against all of Christopher Lee's discrimination claims (Dkt. 17). The Plaintiffs filed a combined response to the motions and Plus4 replied to each motion. Dkts. 21 (response), 23 (reply to Donald), 24 (reply to Lee). The Plaintiffs also filed objections and a motion to strike Plus4's summary judgment evidence. Dkt. 22. Plus4 also filed objections to the Plaintiffs' summary judgment evidence. Dkt. 26. The parties responded to each other's objections. Dkts. 25, 27.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e).

The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), citing *Celotex*, 477 U.S. at 324. The court must view the evidence in the light most favorable

to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl.
Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

Donald and Lee's discrimination and retaliation claims arise under Title VII of the Civil
Rights Act of 1964.  Dkt. 9.  Title VII prohibits an employer from discriminating against its
employees on the basis of "race, color, religion, sex, or national origin," or retaliating against an
employee for filing a complaint or opposing a discriminatory practice.  42 U.S.C. §§ 2000e-2-3;
*Boyd v. State Farm Ins. Co.*, 158 F.3d 326, 328 (5th Cir. 1998) (citing 42 U.S.C. § 2000–2(a));
*see Autry v. Fort Bend Indep. Sch. Dist.,* 704 F.3d 344, 346–47 (5th Cir. 2013) (race); *Long v.
Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (retaliation).  The court will first address each
party's objections to the summary judgment evidence and then analyze each cause of action.

### A.      Plaintiffs' Objections and Motion to Strike (Dkt. 22)

First, the Plaintiffs move to strike any reference to Plus4's third-party human resources
company, CU People, Inc. ("CU People") from Plus4's motion for summary judgment on Donald's
claims.  Dkt. 22.  The Plaintiffs argue that the statements made by CU People constitute hearsay and
that Plus4 has not shown that it falls within a hearsay exception.  Fed. R. Evid. 803; Dkt. 22 at 2.
Second, the Plaintiffs move to strike three sentences in Vladimir Stark's affidavit referencing
CU People.  *Id.* (citing Dkt. 16-5 at 31 ¶ 9).  Third, the Plaintiffs move to strike three exhibits that
are attached to Plus4's motion for summary judgment on Lee's claims.  Dkt. 22 (citing Dkt. 17,
Exs. J, K, L).  The court will address each objection in turn.

First, the Plaintiffs object to any reference to CU People in Plus4's motion for summary
judgment on Donald's claims.  Dkt. 22 (citing Dkt. 16).  The Plaintiffs make a general hearsay
objection to CU People and do not cite to specific sections.  Dkt. 22.  Plus4 responded to the motion

to strike by including excerpts from its motion for the court's convenience.  *See e.g.*,  Dkt. 25 at 2 ("Mr. Stark considered the cost savings that would result from the elimination of Donald's and Ms. Baker's salaries, and the fact that Plus4 already had a contract with CU People, Inc., a third-party HR consulting company").  Plus4 argues that these statements are not hearsay because they are based on Stark's personal knowledge of an existing contract that he signed with a third-party human resources company, and formed the basis for his business decision.  Dkt. 25 at 2–3.  The court agrees with Plus4 and finds that the excerpted passages pertain to Stark's opinion on the financial situation of the company, which he had personal knowledge of as the company's CEO.  Fed. R. Evid. 602, 803(3).  The Plaintiffs' objections to references to CU People are OVERRULED.

Second, the Plaintiffs move to strike portions of the Stark affidavit.  Dkt. 22 (citing Dkt. 16-5, Ex. B).  The Plaintiffs object to the following as hearsay:

> I was aware that Plus4 had an existing contract with CU People, Inc., a third-party HR consulting company, that provided for many of the same services performed by Plus4's two internal HR employees.  Previously, a representative of CU People had informed me that there were services within our existing contract that Plus4 was paying for but was not fully utilizing.  In light of the ongoing budgetary concerns . . . and the fact that Plus4 was already utilizing and paying a third-party HR vendor, I concluded that elimination of Plus4's internal HR department . . . would be a helpful measure to reduce Plus4's expenses.  Dkt. 16-5, Ex. B at 31 ¶ 9.

The court finds that at least some of Stark's statements do not constitute hearsay because they are not offered for the truth of the matter asserted.  As the CEO, Stark signed a contract with CU People, and therefore had personal knowledge of the contents of the contract and that CU People was a third-party human resources company.  Fed. R. Evid. 602, 803(3).  The statement "Previously, a representative of CU People had informed me that there were services within our existing contract that Plus4 was paying for but was not fully utilizing" would constitute hearsay if it were offered for the truth of the matter asserted.  Dkt. 25 at 4–5.

8

However, Plus4 argues that it falls into the state of mind exception to hearsay. *Id.*; Fed. R. Evid. 801, 803(3). Plus4 argues that Stark's declaration "simply offers testimony as to how he initially learned of underutilized services offered by CU People" and was what "Mr. Stark took into consideration when making his ultimate decision to eliminate Plus4's HR department." Dkt. 25 at 5. The court finds that CU People's representations were used as part of the basis for Stark's decision, therefore it falls under the state of mind exception. Fed. R. Evid. 803(3). Accordingly, the Plaintiffs' objections to the three sentences in Stark's affidavit are OVERRULED. The Plaintiffs' motion to strike these three sentences is DENIED.

Next, the Plaintiffs move to strike evidence in Plus4's motion for summary judgment on Lee's claims. Dkt. 22 at 3. Plus4 presents three memoranda from Lee's supervisors Dana Mack, Kerri Zinn, and Sharoye Taylor, describing Christopher Lee's poor work performance in 2014. Dkt. 17-4, Exs. J, K, L. Plus4 argues that the memoranda are admissible as business records under Rule 803(6)(A) because "it was the regular course of business of Plus4 for an employee or representative of Plus4, with knowledge of the acts or events that were recorded, to make these records or to transmit the information to be included in these records." Dkt. 25 at 6 (citing Dkt. 17-2 at 6). Rule 803(6)(A) states that a record of an act, event, condition, opinion, or diagnosis is excluded as hearsay if "the record was made at or near the time by—or from information transmitted by—someone with knowledge." Fed. R. Evid. 803(6)(a).

The Plaintiffs counter that these memos were not made in the ordinary course of business, and were not made contemporaneous to the alleged act or event. Dkt. 22. The memos were either undated or dated in July 2015, several months after Lee was terminated. Dkt. 17-4, Exs. J–L. On November 18, 2014, while Donald was still the Human Resources Manager, Lee was terminated from his position. Dkt. 22. Donald testified that no such memos were prepared or contained in

Lee's employee file when he was terminated.  Dkt. 22-8, Ex. H ¶ 17.  In fact, Dana Mack drafted her memo at Fendley's request on July 1, 2015.  Dkt. 22, Ex. C at 77 (Mack Dep.).

The court agrees with the Plaintiffs that the memos were made months after the alleged events.  The court finds that Plus4 did not sustain its burden to show that the records were made in the ordinary course of business or made near the time of the events.  Fed. R. Evid. 803(6).  Accordingly, the Plaintiffs' objection to Plus4's summary judgment evidence as to Lee's claims is SUSTAINED.  The Plaintiffs' motion to strike (Dkt. 22) is GRANTED IN PART.  The memos prepared by Dana Mack, Kerri Zinn, and Sharoye Taylor (Dkt. 17-4, Exs. J, K, L) are STRICKEN.

To conclude, the Plaintiffs' motion to strike (Dkt. 22) is GRANTED IN PART AND DENIED IN PART.  The Plaintiffs' objections to CU People and to Stark's affidavit are OVERRULED.  The Plaintiffs' objection to memoranda prepared by Lee's supervisors is SUSTAINED.  The memoranda prepared by Dana Mack, Kerri Zinn, and Sharoye Taylor (Dkt. 17-4, Exs. J, K, L) are STRICKEN.

## B.    Plus4's Objections to Emma Donald's Affidavit (Dkt. 26)

Plus4 raises four objections to statements made in Donald's affidavit.  Dkt. 26 (citing Dkt. 21-2, Ex. A).  First, Plus4 objects that Donald does not have personal knowledge to attest that "Ms. Fendley would pressure Sharoye Taylor and Dana Mack, including watching Mr. Lee in meetings, and directing them to take action against Mr. Lee."  *Id.* (citing Dkt. 21-2, Ex. A ¶ 9:3 (Donald Aff.)).  Donald responds that the predicate is laid in the preceding paragraph where Donald states, "Ms. Fendley openly monitored Mr. Lee in front of me and other managers during meetings." Dkt. 27 (citing Dkt. 21-2, Ex. A ¶ 8).  The court finds that Donald made these statements based on first-hand knowledge.  Taken as a whole, the affidavit states that while in Donald's presence,

10

Fendley monitored Lee while he worked.  Fed. R. Evid. 602.  Accordingly, Plus4's objection is OVERRULED.

Second, Plus4 objects to statements attributed to Sharoye Taylor because Donald lacks personal knowledge and the statements are speculative.  Dkt. 26 at 2.

> Ms. Fendley repeatedly watched Mr. Lee and continuously informed Mr. Taylor and Ms. Mack that he was not doing his job. Mr. Taylor and I agreed that we no longer could win against Ms. Fendley and that we should just let it go because we knew the real reason why he was terminated.  Dkt. 21-2, Ex. A ¶ 11:3–4 (Donald Aff.).

Donald argues that these statements are made by the employee or agent of a party opponent (Taylor) and are admissible because they were against the employer.  Fed. R. Evid. 801(d)(2)(D) ("was made by the party's agent or employee on a matter within the scope of that relationship and while it existed").  Donald argues that the statement "we knew the real reason why he was terminated" is not based on speculation.  Dkt. 27.  Donald alleges that Taylor was in a meeting with Plus4 senior management when they discussed Lee's skin color and hair, and that the company needed to start doing the "look test" on new hires.  Dkt. 21-2, Ex. A ¶ 6 (Donald Aff.).

To admit Taylor's statements as non-hearsay under Fed. R. Evid. 801(d)(2)(D), Donald needs to establish that the employee was acting within the scope of his employment when he made that statement. *See Harrison v. Formosa Plastics Corp. Tex.*, 776 F. Supp. 2d 433, 441 (S.D. Tex. 2011) (Rainey, J.) (citing *Kelly v. Labouisse*, 364 Fed. App'x. 895, 896 (5th Cir. 2010) (unpublished)).  For a statement to be an admission of the party opponent, the proponent must establish:  (1) the agency relationship and scope of employment through identifying names or job titles of current employees, (2) that the statements were made during the course of the speakers' employment, and (3) whether the speaker was authorized to act for his principal concerning the matter about which he or she allegedly spoke.  *Id.*

11

Although Donald identifies Taylor as Plus4's Director of Sales who was present when Plus4 management discussed Lee's employment, Donald has not established that he was authorized to speak for Plus4 on this matter. Fed. R. Evid. 801(d)(2)(D); Dkt. 21-2, Ex. A ¶¶ 3, 6. Accordingly, Plus4's objection is SUSTAINED. The court will not rely on the affidavit to the extent that it suggests what Taylor thought or agreed to. Dkt. 21-2, Ex. A ¶ 11:3–4 (Donald Aff.).

Third, Plus4 objects to Donald's statement that "Plus4 now claims that there was a companywide hiring freeze that was implemented during February of 2015, this is not correct." Dkt. 21-2, Ex. A ¶ 15:1 (Donald Aff.). Plus4 argues that Donald fails to demonstrate personal knowledge of this business decision. Fed. R. Evid. 602; Dkt. 26 at 2. Donald responds that she was still Plus4's Human Resources Manager in February 2015, and had personal knowledge of who was hired. Dkt. 27; Dkt. 21-2, Ex. A (Donald Aff.). Although Plus4 claims there was a hiring freeze, Donald attests that Plus4 hired Celeste Douglas for a manager position during the same period. Dkt. 21-2, Ex. A at 15 (Donald Aff.); Dkt. 21-4, Ex. C at 44 (Stark Dep.). The court finds that Donald had personal knowledge of the employer's hiring decisions as the Human Resources Manager in February 2015. Fed. R. Evid. 602. Accordingly, Plus4's objection is OVERRULED.

Finally, Plus4 objects to Donald attesting to other employees' statements because it is hearsay and speculative. Dkt. 26.

> Immediately after my termination, the Vice President of Accounting at Plus4 told me that Plus4's financial situation did not justify the elimination of an entire department. Moreover, my Human Resources Assistant, Amy Baker, was told by Mr. Stark that they were going to bring her back in a couple of months once she signed her severance. Dkt. 22-2, Ex. A ¶ 16:2–3.

Donald argues that these statements are made by Plus4 employees, and thus are admissible against the employer. Fed. R. Evid. 801(d)(2)(D) ("was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"). Plus4 argues that the Vice

12

President's statement lacks foundation (Fed. R. Evid. 601) because there is no evidence that the Vice President evaluated the Human Resources Department for termination.  Dkt. 26.

The court agrees with Plus4 that Donald has not identified the employee by name, nor has she established that the Vice President of Accounting is speaking on matters within the scope of his employment.  Fed. R. Evid. 801(d)(2)(D);  see *Kelly*, 364 Fed. App'x. at 896 (citing *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1566 (11th Cir. 1991) (holding that the inquiry regarding scope of employment was whether the speaker was authorized to act for his principal concerning the matter about which he allegedly spoke).  Because Donald fails to establish that the Vice President of Accounting was authorized to speak on behalf of Plus4, the statement is not admissible.  Plus4's objection to the Vice President of Accounting's statement is SUSTAINED.  The court will not consider this statement.  Dkt. 21-2, Ex. A ¶ 16:2 (Donald Aff.).

Further, Donald must show an exception or non-hearsay reason to admit Amy Baker's double-hearsay statements.  *Id.* at ¶ 16:3.  Donald does not directly respond to Plus4's objections.  Dkt. 27.  Instead, Donald cites to Fed. R. Evid. 801(d)(2)(D) and argues that because the employees made statements that "directly address an essential aspect of this case," the statements are not hearsay.  *Id.* at 3.  Donald fails to address the fact that the statements must be made during the existence of an employer-employee relationship.  Fed. R. Evid. 801(d)(2)(D).  Both Baker and Donald were terminated at the same time and therefore Baker's statements were not made during the course of an existing employer-employee relationship.  Therefore, Plus4's objection to Baker's statement is SUSTAINED.  The court will not consider this statement.  Dkt. 21-2, Ex. A ¶ 16:3 (Donald Aff.).

To conclude, Plus4's objections to the Plaintiffs' summary judgment evidence (Dkt. 26) are SUSTAINED IN PART AND OVERRULED IN PART.  Plus4's objections to statements made by

Sharoye Taylor, the Vice President of Accounting, and Amy Baker (Dkt. 21-2, Ex. A ¶¶ 11:4, 16:2–3 (Donald Aff.)) are SUSTAINED. Plus4's remaining objections are OVERRULED.

## C.     Title VII Discrimination

Plus4 moves for summary judgment on both of Donald's and Lee's discrimination claims. Dkts. 16, 17.  A Title VII race discrimination case can be proven with direct or circumstantial evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007).  To qualify as direct evidence, a document must be (1) related to the protected class, (2) proximate in time to the termination, (3) made by an individual with authority over the termination, and (4) related to the employment decision. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir.1996)).

Claims without direct evidence are analyzed under the *McDonnell Douglas* framework. *Turner*, 476 F.3d at 345 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973)). First, a plaintiff must present a *prima facie* case of discrimination. *Id.*  If successful, the burden of production shifts to the employer to "rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for adverse employment action." *Id.*  "If the employer meets its burden, then it shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination." *Id.*  "If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the *prima facie* case, will usually be sufficient to survive summary judgment." *Id.*

To establish a *prima facie* discrimination case under Title VII, the Plaintiffs must show that he or she (1) is a member of a protected class, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) that others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (citing

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)). In reduction in force cases, where a plaintiff is not replaced, the Fifth Circuit provides an alternative fourth element: a plaintiff must show that he or she was "discharged because of [his or her protected class]." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

     *1.    Emma Donald's Discrimination Claims*

Donald alleges that she was terminated based on race, color, and/or sex discrimination. Dkt. 9 at 10 (citing 42 U.S.C. § 2000e). Donald alleges that her supervisor, Fendley, told her to hire and fire certain individuals and made derogatory comments based on race. Dkt. 9. Plus4 argues that Donald was terminated due to a reduction in force and that the Human Resources Department was eliminated due to financial reasons. Dkt. 16.

First, the court will consider whether Donald has established a *prima facie* discrimination case. Donald easily satisfies the first and third elements of her *prima facie* case. It is undisputed that as a 50-year-old African American female, Donald was a member of at least one protected class. Dkts. 9, 16. The Fifth Circuit has held that "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (citing *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). Donald's discharge from her position qualifies as an adverse employment action. Dkt. 21-2, Ex. A (Donald Aff.). Plus4, however, argues that Donald cannot establish the other two elements to show a *prima facie* case of discrimination. Dkt. 16.

     a.    Qualified for the Position

Plus4 argues that Donald must show that she was qualified not only for the position she was fired from, but also for another position that Plus4 could have reassigned her to. Dkt. 16 at 19 (citing

*Eugene v. Rumsfeld*, 168 F. Supp. 2d 655, 668 (S.D. Tex. 2001)).  Donald argues that she is required to only show that she was qualified for her old job.  Dkt. 21 (citing *Palasota*, 342 F.3d at 576).

Courts in the Fifth Circuit are split on which interpretation of the test to apply.  *See Richard v. Clear Lake Reg'l Med. Ctr.,* CIV.A. H-14-358, 2015 WL 3965735, at *6 (S.D. Tex. June 30, 2015) (collecting cases).  Because Plus4 eliminated the only two positions in the Human Resources Department, there were no other available positions that Donald could have been taken.  Dkt. 16-5, Ex. B (Stark Aff.).  If the court adopts this interpretation of the test, a plaintiff's claim would be defeated anytime an entire department is eliminated.  *Rumsfeld*, 168 F. Supp. 2d at 668.  Because adopting this interpretation yields unreasonable outcomes, the court adopts the second interpretation that is more appropriate under the facts of this case.  Under the latter interpretation, there is no dispute as to whether Donald was qualified for her role as Human Resources Manager.  *See* Dkts. 16, 21, 23.  The court finds that Donald has established this prong of her *prima facie* claim.

b.      Otherwise Terminated Because of her Protected Status

Because a plaintiff in a reduction in force case is generally not replaced, Donald need not prove that she was replaced by someone outside her protected class to make a *prima facie* showing. *Bauer*, 169 F.3d at 966.  Donald must, however, show that she was otherwise terminated because of her protected status.  *Id.*  "[T]he plaintiff need only show evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."  *Palasota*, 342 F.3d at 576 (internal quotations omitted).  Plus4 argues that Donald cannot establish that at the time of her discharge Plus4 "(1) consciously refused to retain her as a result of her protected classes, or (2) Plus4 regarded race, color, or sex as a negative factor when making its decision to include Donald in the reduction in force."  Dkt. 16 at 10 (citing *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir. 1991).

16

First, the record is devoid of any mention of sex discrimination outside of the conclusory allegations in Donald's complaint. *See* Dkts. 1, 21. While both of the terminated employees from the Human Resources Department are female, Donald does not present any evidence to show that Plus4 terminated her position because of her sex. *See* Dkt. 16-5, Ex. A at 127 (Donald Dep.). Because it is the plaintiff's burden to establish a *prima facie* case and Donald has failed to do so, Plus4's motion for summary judgment as to Donald's sex discrimination claim is GRANTED.

Second, with regard to race and color discrimination, Donald introduces little evidence to support her case. She testified that her supervisors' discriminatory remarks were a motivating factor in Plus4's decision to terminate her. Dkt. 21-2, Ex. A (Donald Aff.). The Fifth Circuit has held that discriminatory remarks may be taken into account "even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." *Palasota*, 342 F.3d at 578. However, "stray remarks" and "comments that are vague and remote in time are insufficient to establish discrimination." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 420 (5th Cir. 2009) (quoting *CSC Logic*, 82 F.3d at 655) (internal quotes omitted).

Donald alleges that in July 2014, supervisor Patricia Fendley gave her instructions on hiring for the Humble branch: "Hire all White but maybe have one (1) Black person teller in the back so they wouldn't be seen," and "We have to have the right look." Dkt. 21-2, Ex. A at 2, ¶3 (Donald Aff.). These comments were made almost seven months prior to Donald's March 24, 2015 termination. *Id.* Donald also claims that at an unknown date, Fendley told her that Stark wanted Donald fired. *Id.* at ¶ 14. Aside from defects in the temporal nature of these comments, Donald has not provided any evidence that *she* was terminated because of her color or race. "The issue . . . is whether the [defendant] discriminated against [the plaintiff], not whether it discriminated against

other [] employees." *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 813 (5th Cir. 1991).

Prior to Donald's March 27, 2015 termination, Donald alleges that she e-mailed her supervisors on March 12, 2015, regarding complaints against an Information Technology director who treated African American employees unfairly. Dkt. 9 at 7–8 (Compl.). Donald asserts that the defendant never addressed her complaint or took any disciplinary action against the employee. *Id.* This account, however, was not substantiated by any depositions or affidavits in the record. Dkt. 21. Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence.").

In Donald's response to the motion for summary judgment, she rebuts Plus4's proffered reason for a reduction in force and questions the validity of a memo that Stark used in his decision to eliminate the Human Resources Department. Dkt. 21. Donald, however, does not respond to Plus4's argument that she failed to establish a *prima facie* case—the first step in the *McDonnell Douglas* framework. *See Turner*, 476 F.3d at 345.

Further, Plus4 argues that because Stark is of the same protected class as Donald, and was the same individual who hired and fired her, courts may presume a lack of discriminatory intent. *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1996), *abrogated by Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097 (2000); Dkt. 16 at 20–24; Ex. B ¶ 2 (Stark Aff.) ("I am an African-American Black man . . . Currently, eight of the 11 members [of] Plus4's board of directors are African-Americans."). Proof that "decision makers are all of the same protected class as the discharged employee, [makes it] less likely that unlawful discrimination was the reason for the discharge." *Rhodes*, 75 F.3d at 1002; *see also Kelly v. Costco Wholesale Corp.*, 632 Fed. App'x. 779, 783 (5th Cir. 2015) (holding that employer's "membership in the same

protected class as [plaintiff] bolsters the inference that age discrimination was not the reason for his termination").

Additionally, the "same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears*, 337 F. App'x at 421–22.  Here, Stark is of the same protected class as Donald and was the same person who hired and fired her, generating a rebuttable inference that racial discrimination was not the employer's motivating factor.

Without further evidence as to Plus4's discriminatory intent, the court finds that Donald has not met her burden of establishing a *prima facie* case for discrimination based on race and color. Therefore, Plus4's motion for summary judgment as to Donald's race and color discrimination claims is GRANTED.

### 2.     Christopher Lee's Discrimination Claims

Lee alleges that he was terminated based on discrimination against his race and color.  Dkt. 9 at 10 (citing 42 U.S.C. § 2000e).  In response to the motion for summary judgment, Lee agreed to nonsuit his discrimination claim based on religion.  Dkt. 21 at 6 n.1.  Lee argues that he has direct evidence proving that his race and color were the basis for his termination.  Dkt. 21.  "[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S. Ct. 613, 621 (1985).

As direct evidence, Lee submits affidavits from Donald and another Plus4 employee showing that Fendley made derogatory comments about his race, color, and hair style.  Dkt. 21.  "[F]or comments in the workplace to provide sufficient evidence of discrimination, they must be 1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the

19

terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (internal quotations omitted).   Comments about a plaintiff's protected class are taken into account "[e]ven where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." *Palasota*, 342 F.3d at 578.

Lee argues that Fendley made discriminatory remarks and told Donald in July 2014 to hire only whites for the new Humble branch.   Dkt. 21-2, Ex. A at 2, ¶ 3 (Donald Aff.).   Donald also testified that Fendley said that the landlord at the Humble branch was a racist and a "good ole boy," and therefore she did not want to hire blacks for that location.   *Id.*; Dkt. 21-5 at 61 (Taylor Dep.). Lee argues that these comments were made on the cusp of his employment.   Dkt. 21.   Donald testified that she verbally opposed this practice and in August 2014, proceeded to hire Lee, an African American male, to work at the Humble branch.   *Id.* at ¶ 4.

Donald testified that Fendley ordered her to fire Lee on his first day of work because he was black and had dreadlocks, and to not tell the staffing agency that placed Lee with Plus4 the real reason why they were firing him.   Dkt. 21-2, Ex. A ¶¶ 3–9.   Donald claims that Fendley ordered her to terminate Lee's employment "several more times."   *Id.*   Lee was terminated about three months later in November 2014.   Dkt. 9.

Plus4 counters that Fendley never instructed Donald to fire Lee and argued that Lee was terminated due to performance issues.   Dkt. 17-3, Ex. G at 31, 43 (Fendley Dep.).   Plus4 contends that Fendley did not know Lee's race or color when she asked about Lee's dreadlocks because she viewed him through a video monitor where he had a long-sleeved shirt on and his back was turned toward the camera.   Dkt. 17-3, Ex. G at 112–13 (Fendley Dep.).   Plus4 also argues that dreadlocks

is a changeable hair style and not an immutable characteristic, and thus not an actionable racial discrimination claim.[1]  Dkt. 17.

Plus4 argues that Fendley's statements are not direct evidence of Plus4's decision to terminate Lee and cites to cases in which general comments about a protected class were not enough to constitute direct evidence in a plaintiff's termination.  Dkt. 24 at 3–4 (citing *Haas v. ADVO* Sys., Inc., 168 F.3d 732, 733(5th Cir.1999) (job interviewer's statement that plaintiff's age caused him "concern" was not direct evidence of age discrimination in employer's decision not to hire plaintiff because an additional inference of discrimination was required).  However, that is not the case here, as Fendley's comments were not "vague" or general statements about race or color, but were specifically made about Lee in the context of his termination.  *CSC Logic*, 82 F.3d at 655–56.

Further, Plus4 argues that there is no evidence that Stark relied on race or color discrimination in making his decision to terminate Lee.  Dkt. 24.  According to Plus4, Lee's termination was initiated by the Humble Branch Manager and then approved by Stark.  Dkt. 24 at 3.  The court finds that there is a genuine dispute of material fact.  The court notes that Fendley had a role in the hiring and firing process because Lee's approval to hire form was signed by both Fendley and Stark.  Dkt. 13-3, Ex. D.  And emails regarding Lee's performance at work were sent up a chain of command from the Humble Branch Manager to the Human Resources Manager, and then to Fendley.  Dkt. 17-4, Exs. N, O (Donald asking Fendley for "permission" to have "Friday be [Lee's] last day").  A reasonable jury could find for either party based on whether Fendley's comments influenced Stark's decision to terminate him.

---

[1] The court need not address this argument at this time because Plus4's motion for summary judgment is denied based on other direct evidence related to Lee's race and color.

Viewing the evidence in the light most favorable to the non-moving party, the court finds that Fendley's statements are "direct and unambiguous" remarks that would allow "a reasonable jury to conclude without any inferences or presumptions that [the plaintiff's protected class] was a determinative factor in the decision to terminate the employee." *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000); *see Fordoche, Inc.*, 463 F.3d at 392; *Brauninger v. Motes*, 260 Fed. App'x. 634, 641 (5th Cir. 2007). Fendley's comments were related to Lee's race and color, were made proximate in time to his termination, were directly seeking his termination, and were made by someone who had influence over his employment. *Auguster*, 249 F.3d at 405; *Palasota*, 342 F.3d at 578. Because a genuine dispute of material fact exists, Plus4's motion for summary judgment as to Lee's race and color discrimination claims (Dkt. 17) is DENIED.

**D.     Emma Donald's Title VII Retaliation Claim**

Plus4 moves for summary judgment on Emma Donald's retaliation claim. Dkt. 16. Donald's retaliation claims are largely based on the same set of facts set out in her discrimination claims. Dkts. 9, 21. Donald alleges that Plus4 terminated her as retaliation after she refused to terminate Lee, and then met with Plus4's lawyers to discuss her concerns about Plus4's hiring practices. Dkt. 9 at 12.

Title VII permits a retaliation claim in instances in which an employee has complained of an unlawful employment practice or made a Title VII charge against an employer and the complaint is a motivating factor of the adverse employment action. 42 U.S. § 2000e–3(a). To establish a *prima facie* retaliation case, a plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) causation exists between the adverse action and the protected activity. *LeMaire v. La. Dep't of Transp.*, 480 F.3d 383, 388 (5th Cir. 2007). The court will first consider whether Donald has established a *prima facie* case for retaliation under Title VII.

*1.    Establishing a* Prima Facie *case*

a.    Protected Activity

"Under Title VII, an employee has engaged in protected activity if he or she has (1) opposed

any practice made an unlawful employment practice by this subchapter, or (2) made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter." 42 U.S.C.A. § 2000e-3(a); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–28

(5th Cir. 2000).  Here, Donald filed her EEOC charge after she was terminated, therefore she must

establish her *prima facie* case under the opposition test.  *Id.*; Dkt. 9.  An employee need not prove

that the employer's practices were actually unlawful, but only that the employee  held "a reasonable

belief that the employer was engaged in unlawful employment practices."  *Byers*, 209 F.3d at 428

(citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)).

Notwithstanding this legal standard, Plus4 argues that Donald fails to establish a *prima facie*

retaliation case because she did not engage in protected activity.  Dkt. 16.  Under the "manager rule,"

a management employee who performs routine duties does not engage in protected activity when she

disagrees with her employer's actions. Dkt. 16 at 26–27 (citing *McKenzie v. Renberg's Inc.*, 97 F.3d

1478, 1486–87 (10th Cir. 1996) (Fair Labor Standards Act case)).  "Instead, to qualify as 'protected

activity' an employee must cross the line from being an employee 'performing her job . . . to an

employee lodging a personal complaint.'" *Brush v. Sears Holdings Corp.*, 466 Fed. App'x. 781, 787

(11th Cir. 2012) (unpublished) (holding a disinterested party to a harassment claim cannot use that

claim as a basis for his or her own Title VII action).

While the rule is more commonly applied in the context of the Fair Labor Standards Act,

Plus4 has failed to offer any binding authority in which courts in the Fifth Circuit have applied the

"manager rule" to a Title VII retaliation claim.  Dkt. 16 at 27 (citing six unpublished cases outside the Fifth Circuit that applied the "manager rule" to Title VII claims).  The court is not inclined to adopt a rule that has not been adopted by the Fifth Circuit.  *See Littlejohn v. City of N.Y.*, 795 F.3d 297, 317 n.16 (2d Cir. 2015) ("[W]e decline to adopt the manager rule here. The manager rule's focus on an employee's job duties, rather than the oppositional nature of the employee's complaints or criticisms, is inapposite in the context of Title VII retaliation claims.").  As such, the court will not apply the "manager rule" to the instant case.

Donald argues that she participated in protected activity.  Dkt. 21.  On Stark's recommendation, Donald spoke to Plus4's lawyers on two occasions. Dkt. 21-2, Ex. A ¶¶ 10, 13 (Donald Dep.).  The first meeting occurred in August 2014, two days after Lee was hired, in which Donald shared that Fendley had instructed her to hire only whites for the Humble branch location and to terminate Lee because he was black and had dreadlocks.  *Id.*  Donald's second meeting occurred in March 2015, two weeks prior to Donald's own termination.  *Id.*  At the meeting, Donald said she believed Fendley was retaliating against her for:

> (1) hiring non-whites for the Humble branch; (2) refusing to terminate Mr. Lee because he was black and had dreadlocks; (3) refusing to support the termination of Ms. LaDonna Wells; (4) that Ms. Fendley was retaliating against Ms. Wells; and (5) that Ms. Fendley made derogatory comments about African-American names. *Id.* at ¶ 13.

The court finds that Donald had a reasonable belief that Plus4 engaged in unlawful activity when it discriminated against African Americans and blacks.  *See Byers*, 209 F.3d at 427–28.  As summarized in her March 2015 meeting with Plus4's lawyers, Donald argues that she believed that Fendley's hiring preference for whites only and Fendley's order to terminate Lee because he was black and had dreadlocks were wrong.  Dkt. 21-2, Ex. A ¶ 13.  Donald expressed her opposition verbally to Fendley in person, through e-mails, and through a meeting with Stark to address her

24

concerns. *Id.* at ¶¶ 4–13 ("I informed Ms. Fendley that this was considered discrimination and that [Lee] cannot be fired for those reasons."). The standard only requires that Donald held a reasonable belief—not actually prove— that her employer's actions were unlawful. *Byers*, 209 F.3d at 428.

Plus4 counters that some of Donald's communications with Plus4 do not allege racial discrimination and therefore are not protected. Dkt. 16 at 29. Plus4 focuses on two e-mails that Donald sent to Fendley and Stark concerning other employees' rudeness and performance. Dkt. 16, Exs. S, T. The court agrees with Plus4 that those two e-mails do not allege racial discrimination and are not protected activity. However, the court also finds that Donald's multiple attempts to communicate her opposition to Fendley, Stark, and Plus4 attorneys about Plus4's hiring practices and Donald's refusal to terminate employees because of their race and color constitute protected activity. *See* Dkt. 21-2, Ex. A (Donald Aff.). The court finds that Donald has met the protected activity element of her *prima facie* retaliation claim.

b.    Adverse employment action

In the context of retaliation cases, an adverse employment action is any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). It is undisputed that Donald experienced an adverse employment action when she was terminated from her position.[2] Dkts. 16, 21. The court finds that Donald has met this prong for establishing her *prima facie* claim of retaliation.

---

[2] Because termination from a job constitutes an adverse employment action, the court need not decide whether Plus4's other acts constitute an adverse employment action: placement of a filing cabinet in her office, exclusion from unspecified meetings, and poor performance reviews. Dkt. 16.

c.      Causal Link

To establish a causal link between the protected activity and the adverse employment action, a plaintiff must prove that he or she would not have experienced an adverse employment action "but-for engaging in protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 685 (5th Cir. 2001). The *prima facie* standard is much less stringent than the but-for standard to show pretext and may be satisfied, in certain cases, based on temporal proximity between the protected activity and the adverse employment action. *Long*, 88 F.3d at 305 n.4; *see also Ware v. CLECO Power L.L.C.*, 90 Fed. App'x 705, 708 (5th Cir. 2004) (finding that fifteen days between the time plaintiff filed his complaint and was terminated is sufficiently "close timing" to establish temporal proximity).

In its motion for summary judgment, Plus4 argues that Donald's August 2014 meeting with Plus4's lawyer was too remote in time from Donald's March 2015 termination. Dkt. 16 at 33. Plus4 completely ignores Donald's March 10, 2015 meeting. Dkt. 21-2, Ex. A ¶ 13. According to Donald, she experienced an adverse employment action on March 27, 2015, within days after she reported her concerns to Plus4's lawyers about Fendley's hiring preferences and her belief that Fendley was retaliating against her and other employees. Dkt. 21-2, Ex. A ¶¶ 13, 16. For purposes of Donald's *prima facie* case, the court finds that the close proximity in time between Donald's meeting with Plus4's lawyers and her termination is sufficient to create a casual link. Therefore, Donald has established her *prima facie* case for retaliation.

2.      *Legitimate, non-discriminatory reason for termination*

Next, the burden of production shifts to Plus4 to articulate a legitimate, non-discriminatory reason for terminating Donald. *Long*, 88 F.3d at 308. Plus4 argues that financial concerns caused it to eliminate its two human resources positions, including Donald's. Dkt. 16. Plus4 presents evidence that its net income became negative in March 2015 and that Plus4 initiated a hiring freeze.

26

Dkt. 16, Ex. C at 47 (Stark Dep.); Ex. F (Plus4 financial statement); Ex. G (Fendley-Donald February 6, 2015 e-mail exchange); Dkt. 21-4, Ex. C at 44 (Stark Dep.). Plus4 argues that in early March 2015, Plus4 managers (excluding Stark) met to discuss measures to reduce expenses. Dkt. 16, Ex. D at 54 (Fendley Dep.). Among several recommendations, they suggested reducing staffing costs by $50,000. *Id.*; Dkt. 16, Ex. I at 94 (Mack Dep.); Ex. J at 519 (March 3, 2015 manager goal meeting minutes).

Stark testified that after receiving the managers' meeting minutes, which included the general recommendation to reduce staffing costs, Stark conferred with Fendley and others and decided to eliminate the Human Resources Department. Dkt. 16, Ex. C at 52–53 (Stark Dep.). Next, Stark independently prepared a report for analyzing a reduction in force, and concluded that eliminating the two human resources positions would save Plus4 around $110,000 (the "Memo"). Dkt. 16, Ex. B (Stark Dec.); Dkt. 23-2 at 39 (memo analyzing reduction in force). The Memo also stated that an Executive Assistant could absorb any duties not handled by a third-party human resources company. *Id.* The court finds that Plus4's proffered reason would permit a trier in fact to conclude that there was a legitimate, non-retaliatory reason for Donald's termination.

### 3. *Pretext for retaliation*

Finally, the burden shifts to Donald to articulate a genuine issue of material fact by offering substantial evidence that Plus4's reasons for the adverse employment action were actually a pretext for retaliation. A plaintiff may avoid summary judgment and show but-for causation by demonstrating a conflict in substantial evidence on this ultimate issue. *Hernandez*, 670 F.3d at 660. "Evidence is 'substantial' if it is of such quality and weight that [a] reasonable and fair-minded [jury] in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Long*, 88 F.3d

at 308).  A factfinder may infer the ultimate fact of retaliation from the falsity of the explanation for the adverse employment action.  *Reeves*, 530 U.S. at 146–48.

Donald argues that there is scant evidence of a reduction in force.  Dkt. 21.  For example, there is no evidence that the Memo—the one and only document that Stark allegedly relied on when deciding to eliminate the Human Resources department—was created before Donald's termination. *Id.* at 12.  The Memo is undated and Stark does not remember when the document was created.  Dkt. 21-6, Ex. E (Memo); Dkt. 21-4, Ex. C at 112 (Stark Dep.).  In February 2015, while a hiring freeze was in place, Donald claims that Plus4 hired Celeste Douglas for a manager position without a set office, or job description. *Compare* Dkt. 21-2, Ex. A ¶ 15 (Donald Dep.) *with* Dkt. 21-4, Ex. C at 44 (Stark Dep.).  Donald also questions why there was no mention of a reduction in force among managers in the first quarter of 2015 or at the March 15, 2017 annual board meeting, held just two weeks before the Human Resources Department was eliminated.  Dkt. 21 at 14; Dkt. 21-8, Ex. G at 23 (Zinn Dep.); Dkt. 21-3, Ex. B at 69 (Fendley Dep.); Dkt. 21-4, Ex. C at 58 (Stark Dep.); Dkt. 21-7 (annual board meeting minutes).

Moreover, Donald argues that Plus4 provides the court with inconsistent testimony.  Dkt. 21. While Stark attests that he consulted with Fendley whether each department could absorb a reduction in force, Fendley stated that she did not talk to Stark about a reduction in force at any time during the first quarter of 2015.  *Compare* Dkt. 21, Ex. C at 86 (Stark Dep.) *with* Dkt. 21, Ex. B at 69 (Fendley Dep.); *see Gee v. Principi,* 289 F.3d 342, 347 (5th Cir. 2002) (holding the plaintiff demonstrated a material issue of disputed fact based on discrepancies in defendant's testimony).

Plus4 characterizes the evidence differently.  Plus4 argues that the decision to eliminate the two full-time positions in the Human Resources Department was made after the company began facing financial difficulties.  Dkt. 16, Ex. B (Stark Dec.). Plus4 argues that even if Donald's

protected activity factored into Stark's decision to terminate her, she still would have been terminated due to Plus4's financial issues.  Dkt. 16 at 34 (citing *Long*, 88 F.3d at 304 n.4).  Plus4 also contends that Donald cannot show that Stark knew about her allegedly protected activity when he made his decision to terminate her position.  Dkt. 16 at 33–34.  Donald, however, argues that Stark was the one who recommended that she talk to Plus4's lawyers in both the August 2014 and March 2015 meetings and that Donald was scheduled to meet with Stark after her March 2015 meeting to discuss her complaints about Fendley.  Dkt. 21-2, Ex. A ¶ 13.

Based on the inconsistent testimony and credibility issues with the Memo, a material fact exists on whether Stark's decision to terminate Donald was influenced by financial reasons or based on Donald's protected activity.  The court finds that a dispute of material fact exists and a reasonable factfinder could conclude that the reasons proffered by Plus4 were pretexts for unlawful retaliation.  *Long*, 88 F.3d at 308.  Accordingly, Plus4's motion for summary judgment as to Donald's Title VII retaliation claim is DENIED.

## V. CONCLUSION

The Plaintiffs' motion to strike (Dkt. 22) is GRANTED IN PART and DENIED IN PART.  The Plaintiffs' objections to Plus4's summary judgment evidence (Dkt. 22) is SUSTAINED IN PART AND OVERRULED IN PART. The Plaintiffs' objection to memoranda prepared by Lee's supervisors is SUSTAINED.  Memoranda prepared by Dana Mack, Kerri Zinn, and Sharoye Taylor (Dkt. 17-4, Exs. J, K, L) are STRICKEN.  The Plaintiffs' remaining objections to Plus4's summary judgment evidence are OVERRULED.

Next, Plus4's objections to Donald's affidavit (Dkt. 26) are SUSTAINED IN PART AND OVERRULED IN PART.  Plus4's objections to statements made by Sharoye Taylor, the Vice

President of Accounting, and Amy Baker (Dkt. 21-2, Ex. A ¶¶ 11:4, 16:2–3 (Donald Aff.)) are SUSTAINED.  Plus4's remaining objections to the Plaintiffs' summary judgment evidence are OVERRULED.

Plus4's motion for summary judgment as to Donald's claims (Dkt. 16) is GRANTED IN PART and DENIED IN PART.  Summary judgment as to Donald's sex, race, and color discrimination claims is GRANTED.  Donald's discrimination claims are DISMISSED WITH PREJUDICE.  Summary judgment as to Donald's retaliation claim is DENIED.

Finally, Plus4's motion for summary judgment as to Lee's discrimination claims (Dkt. 17) is GRANTED IN PART AND DENIED IN PART.  Summary judgment as to Lee's religious discrimination claim is GRANTED.  Lee's religious discrimination claims is DISMISSED WITH PREJUDICE.  Summary judgment as to Lee's race and color discrimination claims is DENIED.

Signed at Houston, Texas on July 31, 2017.

_____

Gray H. Miller

United States District Judge

30